DELAWARE RIVER PORT
AUTHORITY, et al.,
Plaintiffs,

v.

FRATERNAL ORDER OF POLICE,
et al., Defendants.

No. CIV.A. 99–5367.

United States District Court,
E.D. Pennsylvania.

March 14, 2001.

---

598

William H. Roberts, Peter A. Gold, Blank Rome Comisky & McCauley LLP, Patrick Matusky, Jerome J. Shestack, Laura E. Krabill, Wolf, Block, Schorr and Solis–Cohen LLP, Philadelphia, PA, for plaintiffs.

Gary M. Lightman, Lightman & Welby, Anthony M. Caputo, Lightman & Welby, Harrisburg, PA, Charles E. Schlager, Jr., Loccke & Correia, PA, Hackensack, NJ, for defendants.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

Plaintiffs are the Delaware River Port Authority and its wholly owned subsidiary, the Port Authority Transit Corporation (collectively, the "DRPA"). Defendants are the Fraternal Order of Police, Penn–Jersey Lodge # 30, and the Policemen's Benevolent Association Intercounties Local # 30 (collectively, "the Unions"). The DRPA is a creature of a compact (the "Compact") entered into by the states of New Jersey and Pennsylvania and approved by Congress, pursuant to the Compact Clause of the Constitution. The purpose of the Compact is to create a single agency to develop the ports of Philadelphia and Camden and to operate bridges and provide mass transportation between New Jersey and Pennsylvania across the Delaware River. The issue in this case is whether the DRPA is under a legal duty to recognize and bargain collectively with the Unions as bargaining agents for certain police officer supervisors employed by the DRPA.

The parties agree that, under the Compact as enacted, the DRPA has no duty to recognize and bargain collectively with the Unions. The parties further recognize that New Jersey and Pennsylvania may agree to impose additional duties upon the DRPA, not assigned to the DRPA in the Compact when enacted, including the duty to recognize and bargain collectively with the exclusive bargaining agent of its police officers. Under the Compact, such additional duties may be imposed upon the DRPA by one state enacting legislation which is concurred in by the other state.

The Unions assert that since the Compact went into effect, New Jersey and Pennsylvania have enacted parallel and complementary labor relations statutes requiring public employers within their respective jurisdictions to recognize and bargain collectively with police officers. Although the Unions recognize that these public employees labor statutes do not expressly apply to the DRPA, they argue that their enactment evinces an intent on the part of both New Jersey and Pennsylvania to require the DRPA, like other public employers in the two states, to recognize and bargain collectively with the exclusive bargaining agent(s) chosen by their employees. Therefore, the Unions argue that the enactment of these public employees labor statutes satisfy the requirement under the Compact that additional duties can be imposed on the DRPA by the enactment of legislation by one state which is concurred in by the other state.

The DRPA, on the other hand, argues that additional duties may only be imposed upon the DRPA by action of the legislatures of both New Jersey and Pennsylvania making the legislation expressly applicable to the DRPA. Since it is admitted that both legislatures have not so spoken, the DRPA argues, it has no duty under the Compact as enacted to recognize and bargain collectively with the Unions.

In this action, the DRPA seeks a declaratory judgment as to whether it is required to recognize and bargain collectively with the Unions. Before the court are the parties' cross-motions for summary judgment. The court finds that because the legislatures of the two states which created the DRPA, New Jersey and Pennsylvania, have not enacted legislation that expressly imposes upon the DRPA the duty to recognize and bargain collectively with the exclusive bargaining agent of its police officers, the DRPA is not obligated to bargain with the Unions in this case. Therefore, the DRPA's motion for sum-

mary judgment will be granted, and the Unions' motion for summary judgment will be denied.

## II. BACKGROUND

■ Under the Compact Clause of the United States Constitution, *see* U.S. Const. art. I, § 10, cl. 3,[1] states may enter into bilateral agreements in matters of common concern provided that they obtain the consent of Congress. The DRPA was created in 1931 by a compact between the State of New Jersey and the Commonwealth of Pennsylvania ("the Compact"). The following year, Congress gave its consent to the Compact.

The DRPA's governing scheme is carefully constructed to ensure that neither state can impose its will in DRPA affairs against the other state's wishes. The Compact provides for a Board of Commissioners ("the Board") to manage the DRPA's affairs. The Board consists of eight (8) commissioners from each state for a total of sixteen (16) Commissioners. *See* N.J. Stat. Ann. § 32:2–3; 36 Pa. Stat. Ann. § 3503 (art. II).[2] The authority of the Board to manage the affairs of the DRPA is limited in three ways. First, a majority of each state's delegation must approve the Board's action. *See* N.J. Stat. Ann. § 32:3–4; 36 Pa. Stat. Ann. § 3503 (art. III). Second, the Compact gives each

state the right to enact legislation that grants its governor veto power over any DRPA action. N.J. Stat. Ann. § 32:3–4.2; 36 Pa. Stat. Ann. § 3503 (art. III).[3] Third, and most importantly for the purposes of this case, each state's legislature may grant the Board additional powers or impose additional duties by passing legislation that is "concurred in by legislation of the other." N.J. Stat. Ann. § 32:3–5; 36 Pa. Stat. Ann. § 3503 (art. IV).

Article IV(e) of the Compact grants the commissioners the exclusive right to "appoint, hire or employ ... agents and employes [sic], as it may require for the performance of its duties, by contract or otherwise, and fix and determine their qualifications, duties and compensation." N.J. Stat. Ann. § 32:3–5; 36 Pa. Stat. Ann. § 3503 (art. IV(e)). Nevertheless, the Unions contend that the DRPA is required to recognize and bargain collectively with certain of its superior police officers ("superior officers")[4] in an appropriate bargaining unit.[5] By letters to the DRPA dated August 22, 1999 and September 14, 1999, *see* Pls.' Mot. for Summ. J. Ex. 2–3, the Unions sought recognition from the DRPA, on the basis that a majority of superior officers employed by the DRPA had signed authorizations cards designating the respective Unions as their exclusive bargaining agents.[6]

---

1. The Compact Clause provides that "[n]o State shall, without the Consent of Congress, ... Compact with another State, or with a foreign Power...." U.S. Const. art. I, § 10, cl. 3.

2. Pursuant to Article II of the compact, the states appoint their allotted commissioners in slightly different ways. New Jersey's commissioners are all appointed by the Governor of New Jersey with the advice and consent of the New Jersey Senate. Six of Pennsylvania's eight commissioners are appointed by the Governor of Pennsylvania, and Commonwealth's Auditor General and Treasurer fill the other two Board seats.

3. Pennsylvania has declined to give its governor this veto power.

4. The police officers in question are "superior" because they outrank patrol officers and have supervisory responsibilities.

5. For the purposes of this opinion, the court will assume without deciding that the proposed bargaining units are in fact appropriate.

6. The Delaware River Port Authority maintains two separate police forces. One force is employed by the Delaware River Port Authority itself, and the other is employed by the

It is not disputed that the Compact as enacted did not grant any DRPA employees collective bargaining rights, nor did it impose any duty on the part of the DRPA to bargain collectively with the Unions as exclusive bargaining agents. The Unions contend, however, that, as a result of post-Compact enactments by both the New Jersey and Pennsylvania legislatures of statutes which provide collective bargaining right to police officers, the Compact should be deemed to have been amended to impose upon the DRPA the duty to recognize and bargain collectively with its police officers.

The Unions point to New Jersey's Employer–Employee Relations Act, N.J. Stat. Ann. 34:13A–1 *et seq.*, and Act 111, Pa. Stat. Ann. tit. 43, § 217.1 *et seq.*, and argue that because, since the enactment of the Compact, both the New Jersey and Pennsylvania legislatures have granted police officers the right to bargain collectively, each state legislature has "concurred in" the legislation of the other within the meaning of Article IV of the compact. Although neither statute expressly states that it applies to the DRPA, the Unions contend that a statement of "express intent" is not required under Article IV. Instead, the Unions read Article IV merely to require that the states adopt legislation that evidences substantially similar public policies, or, in the alternative, legislation that is complementary or parallel such that it can be considered substantially similar. The Unions argue that the New Jersey and Pennsylvania public employee labor statutes providing for collective bargaining rights for police officers not only evince substantially similar policies but are in fact substantially similar.

The DRPA disagrees, maintaining that Article IV is only satisfied, and the Compact thus amended, when each state enacts legislation that expressly applies to the DRPA. In the alternative, it contends that the statutes cited by the Unions are not complementary or parallel. The DRPA essentially concedes, however, that the respective statutes do express substantially similar public policies.

This case thus presents the question of whether a state "concurs in" the legislation of the other state within the meaning of Article IV of the Compact when both states adopt legislation that (1) expressly applies to the DRPA (the "express intent standard"); or (2) evinces the adoption of substantially similar public policies; and/or (3) is parallel or complementary, meaning that the statutes are substantially similar on their face (the "complementary or parallel standard").

## III. DISCUSSION

### A. *Federal Law Is Controlling.*

 The consent of Congress to a compact between the states transforms the agreement into federal law. *See Cuyler v. Adams,* 449 U.S. 433, 440, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) ("Because congressional consent transforms an interstate compact within [the Compact Clause] into a law of the United States, ... the construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question.") According-

Port Authority Transit Corporation. The Fraternal Order of Police Penn–Jersey Lodge # 30 seeks to represent the sergeants and corporals employed by the Delaware River Port Authority, and the Policemen's Benevolent Association Intercounties Local # 30 wants to represent the sergeants, corporals,

and detectives employed by the Port Authority Transit Police Department. Because the details of which union wants to represent which group of police officers is not relevant to the issue presented by the parties' motions, the court will not differentiate between the different unions or the different police forces.

ly, the court's inquiry will be governed by federal law.[7]

B. *The Express Intent Standard is the Correct Standard to Use in Interpreting Compacts.*

1. *Principles of Statutory Construction Require that Article IV of the Compact be Construed in Favor of the DRPA.*

Article IV of the compact provides that the DRPA "shall also have such additional powers as may hereafter be delegated to or imposed upon it from time to time by the action of either State *concurred in* by legislation of the other." N.J. Stat. Ann. 32:3-5; 36 Pa. Cons.Stat. Ann. § 3503 (art. IV) (emphasis added). The court must determine whether the "concurred in" requirement of Article IV is satisfied, as the Unions contend, when the respective legislatures enact parallel or complementary legislation or adopt substantially similar policies, or, as the DRPA contends, only when the legislatures of the two states have expressly stated that the legislation is intended to apply to the DRPA.

■■■■ The issue presented is one of statutory construction. "The first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in this case.'" *Marshak v. Treadwell,* 240 F.3d 184, 191–92 (3d Cir.2001) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). In determining its plain meaning, the words used in the statute are to be accorded their ordinary meaning. *See Elliot Coal Min. Co., Inc. v. Director, Office of Workers' Compensation Programs,* 17 F.3d 616, 629 (3d Cir.1994).

---

7. Although the parties' obligations, inter se, under the terms of an interstate compact are a matter of federal law, state law is not irrelevant to the inquiry. For example, the standard for determining whether a state has concurred in the legislation of another state for the purpose of amending the compact pursuant to an express provision of the compact is a matter of federal law. The form that the concurrence has taken, i.e., legislation, joint resolution, etc., is a matter of state law. *See, e.g.; Malverty v. Waterfront Comm'n,* 71 N.Y.2d 977, 529 N.Y.S.2d 67, 524 N.E.2d 421, 422 (1988) (examining New York law to determine whether express consent had been granted by legislature). Similarly, determining whether the legislation enacted by the states is parallel or complementary, or evinces similar public policies, is a matter of federal law. *See, e.g., Nardi v. Delaware River Port Auth.,* 88 Pa.Cmwlth. 558, 490 A.2d 949 (Pa.Cmwlth.1985) (comparing New Jersey and Pennsylvania law to ascertain whether they were substantially similar). Fixing the meaning and applicability of the legislation, i.e., what are the rights granted and the duties imposed by the legislation of each state, is a matter of state law. *See, e.g., Fraternal Order of Police, Penn–Jersey Lodge 30 v. Delaware River Port Auth.,* 323 N.J.Super. 444, 733 A.2d 545 (999). Courts, however, have not been careful to explain when they are applying federal or state law, or both, and why they have chosen a state or a federal rule. *Compare Malverty v. Waterfront Comm'n,* 71 N.Y.2d 977, 529 N.Y.S.2d 67, 524 N.E.2d 421, 422 (1988) (interpreting New York law), *Baron v. Port Auth. of New York and New Jersey,* 968 F.Supp. 924, 929 (S.D.N.Y.1997) (interpreting New York law), *and King v. Port Auth. of New York and New Jersey,* 909 F.Supp. 938, 945–46 (D.N.J.1995) (interpreting New Jersey law) *with Int'l Union of Operating Engineers Local 68 v. Delaware River and Bay Auth.,* 147 N.J. 433, 688 A.2d 569 (1997), *Bunk v. Port Auth. of New York and New Jersey,* 144 N.J. 176, 676 A.2d 118 (1996), and *Eastern Paralyzed Veterans Assoc., Inc. v. City of Camden,* 111 N.J. 389, 545 A.2d 127 (N.J.1988) (purporting, in all three cases, to apply federal law but examining primarily New Jersey law).

Yet, given the relatively undeveloped state of interstate compact law, whether the court has applied or relied on federal or state law does not appear to be outcome determinative. Therefore, the court finds it appropriate to look to both the courts which purportedly have relied upon state law and those that while professing to apply federal law have looked in reality only to state law.

The use of dictionaries is an accepted way of finding the common usage of particular words. *See Algrant v. Evergreen Valley Nurseries Ltd. P'ship,* 126 F.3d 178, 188 (3rd Cir.1997) (discussing how words should be understood according to their common usage and using a dictionary to determine their common usage).

In this case, the dictionary definition of the word to "concur" is "to have or express the same opinion" or "to act together," *Webster's II New Riverside University Dictionary* 295 (2d ed.1988). This definition provides little guidance in that the term could apply to either a loose, implicit agreement, as the Unions contend, or an unmistakably clear express statement, as argued by the DRPA.

▮ If application of the clear meaning rule discloses ambiguity, courts resort to other forms of statutory construction. Legislative history, for instance, can be useful when available. *But see Conroy v. Aniskoff,* 507 U.S. 511, 113 S.Ct. 1562, 1568, 123 L.Ed.2d 229 (1993) ("describ[ing] using legislative history as the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends") (Scalia, J., concurring). In this case, neither of the parties before the court has uncovered any legislative fingerprints left by the drafters of the Compact during the enactment process.

▮ In the absence of either unambiguous language or applicable legislative history, the court may examine the "object and policy" of the statute. *See Richards v.* *United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) (stating that in a case where legislative history was "not helpful," in interpreting legislation courts should look to the statute's "object and policy"). In this case, the object and policy of the Compact is to address common concerns of the signatory states within the context of the federal system through a contractual agreement between the two sovereigns with the approval of the federal government. Under this arrangement, the states voluntarily agree to surrender some of their sovereign powers to a bi-state agency. *See U.S. v. Bekins,* 304 U.S. 27, 52, 58 S.Ct. 811, 82 L.Ed. 1137 (1938) ("The States with the consent of Congress may enter into compacts with each other and the provisions of such compacts may limit the agreeing States in the exercise of their respective powers.").[8]

▮ As a general rule of statutory interpretation, surrenders of sovereignty are to be strictly construed in terms of their scope. A corollary to this rule is that any claim of right and entitlement against the sovereign is to be construed in favor of the sovereign. *See Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Although the general rule is primarily invoked by courts considering whether a sovereign has waived its sovereign immunity, *see, e.g., Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) ("[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United

8. *See also Delaware River Port Authority v. Commonwealth of Pennsylvania,* 137 Pa. Cmwlth. 170, 176, 585 A.2d 587, 590 (Pa. Cmwlth.1991) ("By entering into [the compact at issue in this case], a state surrenders pro tanto a portion of its own sovereignty.") (quoting *Delaware River and Bay Authority v. Carello,* 222 A.2d 794, 794 (Del.Ch.1966)); Note, *Charting No Man's Land: Applying Jurisdictional and Choice of Law Doctrines to* *Interstate Compacts,* 111 Harv. L.Rev.1991, 1994–95 ("Taking on interstate compact obligations 'diminishes the freedom of a state to act independently in a particular sphere of interest, and since [the state] has no real control over the acts of its fellow compacting members, it is always bound to a degree by their sins of omission and commission.'") (quoting Marian E. Ridgeway, *Interstate Compacts: A Question of Federalism* 298 (1971)).

States, those conditions must be strictly construed."), strict construction is appropriate where, as in this case, private parties claim that a sovereign state has granted them some right vis a vis the sovereign other than the right to sue. *See U.S. v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 2455, 135 L.Ed.2d 964 (1996) (Souter, J., with three Justices concurring and three Justices concurring in the judgment) (" 'Neither the right of taxation, nor any other power of sovereignty, will be held ... to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken.' ") (quoting *Jefferson Branch Bank v. Skelly*, 1 Black [66 U.S.] 436, 446, 17 L.Ed. 173 (1861)). Therefore, a private party making a claim of right or entitlement against the sovereign, in this case the Unions' claim that New Jersey and Pennsylvania have surrendered some measure of sovereignty in their favor, must show that the sovereigns who are parties to the Compact have expressed themselves "in terms too plain to be mistaken," *Winstar*, 116 S.Ct. at 2455 (quoting *Jefferson Branch Bank v. Skelly*, 1 Black [66 U.S.] 436, 446, 17 L.Ed. 173 (1861)), that the DRPA has the duty to recognize and bargain collectively with the Unions.

Here, it is agreed that under the Compact, as enacted, New Jersey and Pennsylvania did not impose a duty on the DRPA to engage in collective bargaining with its superior officers. It is further recognized that the imposition of a duty on the DRPA to do so would result in a surrender of sovereignty by both New Jersey and Pennsylvania. Neither New Jersey or Pennsylvania, however, has enacted legislation expressly imposing upon the DRPA the duty to bargain collectively with its superior officers. Given that surrenders of sovereignty are to be strictly construed and, when in doubt, construed in favor of the sovereign, the court finds that the Unions have failed to show that New Jer-

sey and Pennsylvania, the sovereigns in question, "have expressed themselves [in imposing on the DRPA a duty to bargain with its superior officers] in terms too plain to be mistaken." *Id.*

The court concludes that principles of statutory construction require that the ambiguous term "concurred in" of Article IV of the Compact be interpreted to require the express consent of both legislatures before additional duties are imposed upon the DRPA which were not imposed at the time of the enactment of the Compact.

### 2. *Other Courts Have Adopted the Express Intent Standard.*

Similar to the result reached here, other courts have required that amendments to a bi-state compact that impose additional duties upon the agency be authorized pursuant to an express statement by the legislature of one state concurred in affirmatively by the legislature of the other.

The issue was considered by the Court of Appeals of New York in *Malverty v. Waterfront Comm'n*, 71 N.Y.2d 977, 529 N.Y.S.2d 67, 524 N.E.2d 421, 422 (1988). In that case, the petitioner, relying on a New York state statute, sought the termination of certain employment restrictions as a longshoreman which had been imposed upon him by the Waterfront Commission, a bi-state agency established by an interstate compact approved by Congress. The relevant compact did not address the issue, but it did provide that the signatory states could amend the compact "by legislative action of either State concurred in by legislative action of the other State." *Id.* (*citing* McKinney's Uncons. Laws of N.Y. § 9870).

The court found that, since the New York law relied upon by the petitioner was devoid of "an express statement that the Legislature was amending or supplement-

ing the provisions of the 'Compact' and that [the New York statute] would take effect upon the enactment by New Jersey of legislation of identical effect," *id.*, the New York legislature never intended the law to apply to the bi-state agency. Accordingly, under *Malverty*, a party claiming an additional right or entitlement against the Waterfront Commission on the basis of a New York state statute promulgated after the enactment of the compact forming the Waterfront Commission must show that: (1) the New York statute expressly applied to the Waterfront Commission; and (2) New Jersey has enacted legislation of identical effect. The court added, in dicta, that the fact that both New Jersey and New York had enacted similar statutes, "evinc[ing] the same, or similar, public policy regarding employment opportunities for former inmates by enacting similar 'antidiscrimination' laws," *id.*, was not sufficient to amend the compact.

The express intent rule has also been applied in New York by the Appellate Division, *see Bailey v. Port Auth. of New York and New Jersey*, 216 A.D.2d 42, 627 N.Y.S.2d 921 (N.Y.App.Div.1995), *aff'g* No. 40149–92, slip op. at 5 (N.Y.Sup.Ct. May 18, 1994) (holding that New York human rights law does not apply to bi-state agency), by the Second Circuit, *see Dezaio v. Port Auth. of New York and New Jersey*, 205 F.3d 62 (2d Cir.2000) (finding that New York's anti-discrimination law did not apply to bi-state agency), and by at least one federal district court, *see Baron v. Port Auth. of New York and New Jersey*, 968 F.Supp. 924, 929 (S.D.N.Y.1997) (same) (citing *Malverty*, 529 N.Y.S.2d 67, 524 N.E.2d at 422). *See also King v. Port Authority of New York and New Jersey*, 909 F.Supp. 938, 945–46 (D.N.J.1995); *C.T.*

*Hellmuth & Assoc., Inc. v. Washington Metro. Transit Auth.*, 414 F.Supp. 408, 409–10 (D.Md.1976).

### 3. *The Complementary or Parallel Standard Is Based on a Misreading of the Law of Compacts.*

The Unions do not agree that the express intent standard states the correct legal rule. Rather, they contend that the weight of contemporary authority supports their position that as long as the parties to a compact, in this case New Jersey and Pennsylvania, have adopted complementary or parallel legislation or legislation that expresses substantially similar public policies, the compact can be deemed to have been amended. Under this standard, the Unions argue, Pennsylvania's Act 111, Pa. Stat. Ann. tit. 43, § 217.1 *et seq.*, and New Jersey's Employer–Employee Relations Act, N.J. Stat. Ann. 34:13A–1 *et seq.*, are applicable to the DRPA. These legislative enactments requiring public employers to bargain collectively with their police officer employees, according to the Unions, can be interpreted to constitute a directive to the DRPA by both New Jersey and Pennsylvania, in this case, that the DRPA has a duty to recognize and bargain collectively with its superior officers.

The Unions rely on a line of case decided by New Jersey state courts, which construed the compacts at issue under federal law.[9] The earliest of the cases is *Eastern Paralyzed Veterans Assoc., Inc. v. City of Camden*, 111 N.J. 389, 545 A.2d 127 (1988), a case which involved the efforts by plaintiffs to apply the New Jersey Construction Code to the DRPA. Specifically, the Unions point to language by the New Jersey

---

**9.** Because the New Jersey Supreme Court was professedly interpreting federal law, their pronouncements are only persuasive authority with respect to this court. Of course, if

New Jersey state law applied and the New Jersey Supreme Court was construing New Jersey law, its holdings would be binding on this court.

Supreme Court in that case that "[b]oth New Jersey and Pennsylvania have consistently required complementary state legislation for single state jurisdiction to be exercised on the [DRPA]." *Id.* at 131 (citation omitted). The Unions' reliance on *Eastern Paralyzed,* however, is misguided for two reasons.

First, *Eastern Paralyzed* involved a statute in which the New Jersey legislature had expressly provided that it applied to "all bistate agencies," which of course includes the DRPA. *See id.* at 133. To the extent that express consent by the state legislature of the state whose statute is being applied to the DRPA is required, the requirement was met in *Eastern Paralyzed,* but has not been met in this case.

 Second, *Eastern Paralyzed,* relied on *Nardi v. Delaware River Port Authority,* 88 Pa.Cmwlth. 558, 490 A.2d 949 (Pa. Cmwlth.Ct.1985). In *Nardi,* both the New Jersey and Pennsylvania legislatures had expressly stated that the specific statutes at issue applied to the DRPA. The issue in *Nardi* was whether the express consent given by both legislatures through the re-

spective statutes were substantially similar in substance, not, as here, whether in the absence of such express consent, the consent of the states could be implied by examining subsequent legislative acts.[10] Therefore, when *Eastern Paralyzed* and *Nardi* are taken together, the rule that emerges is that in order for the Compact to be deemed amended under Article IV by subsequent legislative action, the party asserting the amendment must show that: (1) both states have enacted legislation that expressly applies to the DRPA; and (2) the legislation enacted by each state is substantially similar.[11] This is, of course, the rule adopted by the New York Court of Appeals in *Malverty.* Given that neither *Eastern Paralyzed* nor *Nardi,* the case on which *Eastern Paralyzed* relied, involved the issue of whether in the absence of express consent, complementary or parallel legislation is sufficient to satisfy the "concurred in" requirement of Article IV of the Compact, *Eastern Paralyzed* is not helpful to the Unions' argument.

The Unions also point to *Int'l Union of Operating Engineers Local 68 v. Delaware*

---

10. The other case cited in *Eastern Paralyzed* was *Yancoskie v. Delaware River Port Authority,* 478 Pa. 396, 387 A.2d 41 (Pa.1978), which involved the question of whether the DRPA was immune from suits in the courts of Pennsylvania as a part of the Commonwealth. Regrettably, the court in *Eastern Paralyzed* does not pinpoint the page number to which it drew the authority, and nowhere in *Yancoskie* is there a reference to complementary or parallel or substantially similar legislation. *Yancoskie,* therefore, does not support the proposition that complementary or parallel legislation alone is sufficient to amend the compact. Curiously, *Eastern Paralyzed* also cites by way of "cf." to *Delaware River Joint Toll Bridge v. Colburn,* 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940), for the proposition that "[t]he corollary of the proposition that neither state may unilaterally impose its legislative will on the bi-state agency is that the agency may be subject to complementary or parallel state legislation." *Eastern Para-*

*lyzed,* 545 A.2d at 133. The *Eastern Paralyzed* court's citation to *Colburn* is similar to its citation to *Yancoskie* in two ways. First, a pinpoint cite to *Colburn* is not provided. Second, and more importantly, *Colburn,* like *Yancoskie,* does not address complementary or parallel legislation. This reading of *Colburn* is supported by the fact that the parenthetical proposition used by the court in *Eastern Paralyzed* to summarize the holding in *Colburn* states that "where compact prescribed procedures for land acquisition in each state, no unilateral departure could be made by agency," *Eastern Paralyzed,* 545 A.2d at 133. This parenthetical, the court submits, in no way provides support for the complementary or parallel standard.

11. This reading of *Eastern Paralyzed* and *Nardi* is also the reading most consistent with the principles of statutory construction discussed in Part III.A.1, *supra.*

River and Bay Auth., 147 N.J. 433, 688 A.2d 569 (1997), cert. denied, 522 U.S. 861, 118 S.Ct. 165, 139 L.Ed.2d 108 (N.J.1997); Bunk v. Port Authority of New York and New Jersey, 144 N.J. 176, 676 A.2d 118 (1996); Fraternal Order of Police, Lodge 30 v. Delaware River Port Auth., 323 N.J.Super. 444, 733 A.2d 545, 554 (1999); Ballinger v. Delaware River Port Auth., 311 N.J.Super. 317, 709 A.2d 1336 (1998) for support of their position.

Bunk involved an employee of the Port Authority of New York and New Jersey who was injured on the job and was seeking New Jersey workers' compensation benefits. The issue in Bunk was whether a New Jersey statute which barred state employees from simultaneously obtaining disability pension benefits and workers' compensation benefits applied to the Port Authority. The New Jersey Supreme Court began its analysis with a discussion of the "law dealing with bi-state agencies." Id. at 122.

The Port Authority is not the agency of a single state but rather a public corporate instrumentality of New Jersey and New York. It follows that neither creator state may unilaterally impose additional duties, powers, or responsibility upon the Authority. Nardi v. Delaware River Port Authority, 88 Pa. Cmwlth. 558, 490 A.2d 949, 950 (1985) (citing C.T. Hellmuth & Associates, Inc. v. Washington Metro. Transit Auth., 414 F.Supp. 408 (D.Md.1976)). The corollary of the proposition that neither state may unilaterally impose its legislative will on the bi-state agency is that the agency may be subject to complementary or parallel state legislation. Cf. Delaware River Joint Toll Bridge Comm'n v. Colburn, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940) (where compact prescribed procedure for land acquisition in each state, no unilateral departure could be made by agency).

The illustration of parallelism that we gave in Eastern Paralyzed Veterans Ass'n v. City of Camden, 111 N.J. 389, 545 A.2d 127 (1988) (deciding whether complementary provisions for providing handicapped access existed in both states), was that employees of the Delaware River Port Authority must observe stop lights in New Jersey because Pennsylvania and New Jersey have similar legislation in this regard. See Nardi, supra, 490 A.2d at 951–52 (stating that if disability pay enactments of New Jersey and Pennsylvania were substantially similar, court could find agreement by states concerning extent of disability pay).

Id.

This recitation of the "law dealing with bistate agencies," while lengthy, is incomplete and thus inaccurate. As discussed above, under both its own case, Eastern Paralyzed, the Pennsylvania Commonwealth Court's case in Nardi, and the Court of Appeals of New York's case in Malverty, a party contending that the compact has been amended needs to show: (1) that the states have enacted legislation expressly applicable to the agency; and (2) that the legislation amending the compact is substantially similar. See Part III.B.1, supra. In Bunk, the New Jersey Supreme Court conflated the two prongs of the Eastern Paralyzed–Nardi–Malverty rule, requiring the party who asserts the amendment to show only that the states have enacted complementary or parallel legislation, the second prong of the test, but overlooking the first, i.e., the need to find that both legislatures have made the substantially similar legislation expressly applicable to the DRPA. Since nothing in the text of the New Jersey statute in Bunk, unlike in Eastern Paralyzed and Nardi, pointed to the New Jersey Legislature intending the statute to apply to the DRPA, the result reached by the New

Jersey Supreme Court in *Bunk* was incorrect.

The New Jersey Supreme Court's opinion in *Local 68*, 147 N.J. 433, 688 A.2d 569 (1997), followed closely after *Bunk*. In *Local 68*, the issue was whether the statutory schemes enacted by both New Jersey and Delaware granting its public employees collective bargaining rights constituted implicit consent on the part of the both legislatures for the statutes to apply to the Delaware River Bay Authority. The New Jersey Supreme Court concluded, following its earlier opinion in *Bunk*, that merely by adopting "complementary and parallel legislation," the Legislatures had modified

the Delaware River Bay Authority compact. *See id.* at 575.

*Local 68*, like *Bunk*, incorrectly conflated the two prongs of the *Eastern Paralyzed–Nardi–Malverty* rule. Again, as in *Bunk*, the New Jersey Supreme Court overlooked the fact that in *Eastern Paralyzed* and *Nardi*, the legislation relied upon by the party arguing in favor of the amendment stated that it expressly applied to the DRPA. Moreover, the authority of *Local 68* is further undermined by a lengthy dissent, which points out that the majority's opinion in *Local 68* is flawed as a matter of statutory construction,[12] use of precedent,[13] and public policy.[14]

12. As to statutory construction, the dissent noted that the majority's holding acts to repeal implicitly an express provision of the compact, which gave the Delaware River & Bay Authority "exclusive control over conditions and terms of employment." *Id.*, 688 A.2d at 578 (Garibaldi, J., dissenting). Article VII(e), the provision at issue in *Local 68*, is analogous to Article IV(e) of the compact in this case, and the Unions' position in this case urges this same implicit repeal of a provision of the compact.

13. The dissent also explained that the majority's ruling flowed from an "unwarranted expansion of the dicta in *Eastern Paralyzed*." *Id.* at 576, 545 A.2d 127. In *Eastern Paralyzed*, the New Jersey Supreme Court had remanded the case to the trial court, suggesting, in dicta, that " 'the theories of complementary regulations and implied consent [were to be] given a fuller exposition [upon remand].' " *Id.* at 578, 545 A.2d 127 (quoting *Eastern Paralyzed*, 545 A.2d at 133). As an illustration of the type of parallelism relevant to the inquiry, the court in *Eastern Paralyzed* pointed to the obligation of DRPA employees under the legislation of both states to stop at stop signs in both New Jersey and Pennsylvania. It is this type of "uncomplicated solution," according to the dissent, that *Eastern Paralyzed* had in mind when it referred to complementary laws. *Local 68*, 688 A.2d at 578. However, this "uncomplicated example," according to the dissent, is a far cry from the "power to impose [New Jersey and Delaware] labor laws on the Delaware River

Bay Authority." *Id.* Justice Garibaldi concluded that, to the contrary, "permitting similar legislative acts of compacting states to amend a compact completely disregards the long-standing precedents requiring legislatures to agree expressly before a state can impose duties and obligations on a bi-state agency." *Id.* at 579. It should be noted that the stop sign analogy is also flawed because DRPA employees must obey the traffic laws that apply to whatever roads they use, just in the same way that a Pennsylvania state employee must obey the traffic laws of New Jersey, or any other state for that matter, when operating a vehicle in that particular state. In addition, DRPA employees would not have to stop at stop signs on DRPA property if the DRPA Commissioners enacted a regulation to that effect, notwithstanding New Jersey and Pennsylvania's parallel and complementary laws to the contrary. The two states could only repeal the DRPA regulation by passing substantially similar laws that expressly applied to the DRPA. *See Nardi*, 490 A.2d at 951–52 (holding that if workers' disability laws that expressly applied to the DRPA were substantially similar, the laws would be found to apply to the DRPA).

14. Compounding the problem of the majority's misreading of *Eastern Paralyzed* is the fact that the result also promoted an undesired public policy: " 'to sanction [the practice of imposing unilaterally enacted state legislation on bi-state entities] would lead to discord and a destruction of the purposes for which such

Therefore, the court finds that the New Jersey authorities cited by the Unions to be unpersuasive.[15]

### C. Application of the Express Intent Standard Dictates that the Two Statutes Do Not Apply to the DRPA.

Under the teachings of *Eastern Paralyzed, Nardi,* and *Malverty,* and consistent with principles of statutory construction, a party who asserts that New Jersey and Pennsylvania have concurred in the imposition of additional duties upon the DRPA within the meaning of Article IV of the Compact must show: (1) that New Jersey and Pennsylvania have enacted legislation that expressly imposes a duty upon the DRPA; and (2) that the legislation enacted by each state imposing the duty on the DRPA is substantially similar. Given that in this case, both states have not enacted legislation expressly applicable to the DRPA that imposes an additional duty on the DRPA to recognize and bargain collectively with the exclusive bargaining agent of its police officers, the court concludes that New Jersey and Pennsylvania have not concurred in the imposition of this additional duty upon the DRPA under Article IV of the Compact.[16] In light of the Unions' failure to satisfy this first prong of the rule, the substantial similarity test, even if met in this case, is no basis to assign additional duties to the DRPA not imposed in the Compact when enacted.

### D. The Unions' Other Arguments Are Without Merit.

#### 1. Article IV(n) Does not Dictate the DRPA Must Recognize Its Police Officers' Right to Bargain Collectively.

 The Unions contend that the DRPA's refusal to recognize their superior police officers' right to bargain collectively violates Article IV(n) ("subsection (n)") of the Compact, which grants the DRPA commissioners authority to "[t]o exercise all other powers not inconsistent with the constitution of the two States or of the United States...." This argument fails because subsection (n) does not limit the power granted to the DRPA in subsection (e) of Article IV to "fix and determine the qualifications, duties and compensation [of DRPA employees]." Instead, subsection (n) merely places a limitation on what powers the DRPA may exercise that are not enumerated in the Compact.

 In addition, the constitutional provisions relied upon by the Unions do not apply to the DRPA. New Jersey's constitution states that "[p]ersons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals...."

---

bi-state agencies are formed.'" *Id.* (quoting *Delaware River & Bay Auth. v. New Jersey PERC,* 112 N.J.Super. 160, 166, 270 A.2d 704 (1970), *aff'd,* 58 N.J. 388, 277 A.2d 880 (1971)).

**15.** Two lower New Jersey state courts and two courts in the Eastern District of Pennsylvania have followed *Bunk* and *Local 68. See Pilla v. Delaware River Port Auth.,* No. 98–5723, 1999 WL 345918 at *4 (E.D.Pa. May 7, 1999); *Fulton v. Delaware River Port Auth.,* No. 97–7875, slip op. at 10 n. 13 (E.D.Pa. Apr. 24, 1998); *Fraternal Order of Police,*

*Lodge 30 v. Delaware River Port Auth.,* 323 N.J.Super. 444, 733 A.2d 545, 554 (1999); *Ballinger v. Delaware River Port Auth.,* 311 N.J.Super. 317, 709 A.2d 1336 (1998). For the same reasons, the outcome of those cases is based on an incorrect reading of the law of bi-state agencies.

**16.** Given the resolution of this case, the court has not addressed whether any amendment to the Compact would be effective without the approval of Congress.

N.J. Const. art. I ¶ 19. Because a bistate agency is not the legal creation, subdivision, or agency of any one state, *see Hess,* 513 U.S. at 40, 115 S.Ct. 394, 130 L.Ed.2d 245 (holding that a bistate agency is not a part of any one state and thus does not enjoy sovereign immunity), and art. I ¶ 19 only applies to employees of the state and its subdivisions and agencies, art. I ¶ 19 does not apply to the DRPA.

■ The Pennsylvania constitutional provision cited by the Unions does not confer any substantive rights upon police or fire officers to bargain collectively, but instead grants the legislature the authority to give panels or commissions the right to make binding decisions with respect to labor disputes involving such officers. *See* Pa. Const. art. III § 31. ("[T]he General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting [to settle labor disputes] between policemen and firemen and their public employers shall be binding upon all parties.").

Accordingly, Article IV(n) does not prohibit the DRPA from refusing to recognize its police officers' right to bargain collectively.

2. *The Unions' Res Judicata and Collateral Estoppel Arguments Also Fail.*

■ The Unions contend that the doctrines of res judicata and collateral estoppel preclude the DRPA from obtaining the relief that it seeks based on the decision of the Appellate Division in *Fraternal Order of Police, Penn–Jersey Lodge 30 v.*

*Delaware River Port Auth.,* 323 N.J.Super. 444, 733 A.2d 545 (1999) ("Lodge 30"). Common to both collateral estoppel and res judicata is the notion that a party that previously had an opportunity to litigate fairly an issue in an earlier suit is barred from relitigating the same action at a later time. *See Churchill v. Star Enterprises,* 183 F.3d 184, 194 (3d Cir.1999) (describing the doctrines of collateral estoppel and res judicata).

In *Lodge 30,* the DRPA had voluntarily recognized the plaintiff union as the bargaining agent for a certain class of police officers. After the parties failed to reach an agreement on a new labor contract, the union brought an action in a New Jersey state court seeking to compel the DRPA to participate in state law mandated alternative dispute resolution. The lower court agreed with the union and ordered the DRPA to submit to the state procedures. The DRPA appealed. The Appellate Division framed the issue as follows: "we must decide whether the [DRPA] is required to submit to mediation or public interest arbitration in accordance with the labor laws of this State governing collective bargaining for public employees." *Lodge 30,* 733 A.2d at 546. The court answered that question in the affirmative, holding that the DRPA was required to mediate and, if necessary, submit to public interest arbitration the labor dispute it had with the union. *See id.* Therefore, under *Lodge 30,* once the DRPA voluntarily recognizes a union, it cannot later fail to participate in the labor dispute resolution mechanisms mandated by state law.[17]

---

**17.** The Appellate Division noted that the trial court had considered the DRPA's argument that its voluntary recognition of the union did not grant the union any rights that could not be withdrawn by the DRPA. *See Lodge 30,* 733 A.2d at 547. According to the Appellate Division, the trial court stated that "Pennsyl- vania and New Jersey had 'parallel' or complementary legislation of a different nature, but which ... nevertheless recognizes those same rights and clearly gives public employees a right to freely organize and designate representatives and also to negotiate in good faith." *Id.* To the extent that this statement

The issue in this case, but not present in *Lodge 30*, is whether, in the absence of voluntary recognition, the DRPA is obligated under the terms of the Compact to recognize and bargain collectively with the Unions. In other words, before the Court here is whether the DRPA has a duty under the Compact to recognize and bargain collectively with the Unions and not, as in *Lodge 30*, whether, after it voluntarily agrees to recognize a union, the DRPA has a duty to engage in state mandated alternative dispute resolution. Therefore, because the duty of the DRPA under the Compact to recognize and bargain collectively with police officers was not relevant to the cause of action or the issues involved in *Lodge 30* and was not considered by the Appellate Division, *Lodge 30* is not a bar to the instant action.[18]

## IV. CONCLUSION

The court finds that because the legislatures of the two states which created the DRPA, New Jersey and Pennsylvania, have not enacted legislation that expressly imposes upon the DRPA the duty to recognize and bargain collectively with the exclusive bargaining agent of its police officers, the DRPA is not obligated to bargain with the Unions in this case. Therefore, the DRPA's motion for summary judgment will be granted, and the Unions' motion for summary judgment will be denied.

An appropriate order follows.

by the lower court was intended to address whether the DRPA had a legal duty under the Compact to recognize and bargain collectively with the union, the statement is dictum because, under the facts of *Lodge 30,* the duty to recognize and bargain collectively with the union was not essential to the court's determination of the case. *See Coffin v. Malvern Federal Sav. Bank,* 90 F.3d 851, 853 (3d Cir. 1996) ("[S]uch a finding, not being necessary to the decision, would be mere dictum and

### *ORDER*

**AND NOW,** this **14th** day of **March, 2001,** upon consideration of plaintiffs' motion for summary judgment (doc. no. 20) and defendants' motions for summary judgment (doc. nos. 22 & 23), and for the reasons set forth in the court's memorandum dated March 14, 2001, it is hereby **ORDERED** that plaintiffs' motion for summary judgment (doc. no. 20) is **GRANTED** and defendants' motions for summary judgment (doc. nos. 22 & 23) are **DENIED.**

**AND IT IS SO ORDERED.**

### *JUDGMENT*

**AND NOW,** this **14th** day of **March, 2001,** for the reasons set forth in the court's memorandum dated March 14, 2001 and pursuant to the court's order dated March 14, 2001, it is hereby **ORDERED** that **JUDGMENT** is **ENTERED** for plaintiffs and against defendants on the complaint (*see* doc. no. 1).

It is **FURTHER ORDERED** that the case is **CLOSED.**

**AND IT IS SO ORDERED.**

would not give rise to res judicata or collateral estoppel.")

18. The DRPA is of course free to voluntarily recognize and bargain collectively with its superior officers. The issue presented by this case is not whether the DRPA has the power to recognize and bargain collectively, but whether it is under any legal duty to do so.