733 A.2d 545 (1999)
323 N.J. Super. 444
FRATERNAL ORDER OF POLICE, Penn-Jersey Lodge 30 and Joseph Vena, Plaintiffs-Respondents,
v.
The DELAWARE RIVER PORT AUTHORITY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 29, 1999.
Decided July 22, 1999.
*546 Peter A. Gold, Cherry Hill, for defendant-appellant (Blank, Rome, Comisky & McCauley and Samuel M. First, attorneys; Mr. Gold, on the brief).
Charles T. Joyce (Spear, Wilderman, Borish, Endy, Spear & Runckel) of the Pennsylvania bar, admitted pro hac vice, for plaintiffs-respondents (Benjamin Eisner and Mr. Joyce, on the brief).
Karen L. Jordan, Deputy Attorney General, for amicus curiae State of New Jersey (Peter Verniero, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel and on the brief; Ms. Jordan, on the brief).
Before Judges D'ANNUNZIO, CUFF and COLLESTER.
The opinion of the court was delivered by CUFF, J.A.D.
In this appeal, we must decide whether the Delaware River Port Authority (DRPA) is required to submit to mediation or public interest arbitration in accordance with the labor laws of this State governing collective bargaining for public employees. We hold that it does and affirm the order requiring the DRPA to mediate and, if necessary, submit to public interest arbitration its contract dispute with its police officers.
The DRPA is a bi-state agency created by a Compact between New Jersey, N.J.S.A. 32:3-1 to -18, and Pennsylvania, Pa. Stat. Ann. tit. 36, §§ 3503 to 3510.7 (West 1999), and approved by Congress, Res. 26, 47 Stat. 308 (1932).[1] The Compact *547 declares that the interests of both states will be best served by consolidating two existing commissions and granting to the combined authority additional powers and authority regarding an existing bridge across the Delaware River and additional transportation facilities between the two states. N.J.S.A. 32:3-1. Its mission is to develop, operate and maintain transportation facilities between the two states. N.J.S.A. 32:3-1, -2. It operates and maintains the Betsy Ross, Benjamin Franklin, Walt Whitman and Commodore Barry Bridges which span the Delaware River and the PATCO high-speed rail line between Philadelphia and suburban Lindenwold, New Jersey. It is a "body corporate and politic," constituting "the public corporate instrumentality" of the two states and "exercising an essential governmental function." N.J.S.A. 32:3-2.
The DRPA is authorized to appoint, hire or employ "such agents and employees as it may require for the performance of its duties, ... and fix and determine their qualifications, duties and compensation." N.J.S.A. 32:3-5(e). To that end, the DRPA employs seventy-eight police officers. The DRPA voluntarily recognized plaintiff, Fraternal Order of Police, Penn-Jersey Lodge 30 (Lodge 30), as the representative of these officers, and the parties have negotiated and executed collective bargaining agreements for over twenty years.
The parties' most recent agreement expired in 1996 and they commenced negotiations regarding a new agreement. When their negotiations reached an impasse, the DRPA imposed its final offer on Lodge 30. Plaintiffs[2] sought to enjoin the DRPA from implementing its terms and conditions of employment, to require the continuation of good faith bargaining, to appoint a mediator to assist the process, and for "such further relief that this Court deems necessary."
The DRPA moved for summary judgment arguing that, despite public employees' right to organize and negotiate collectively in both New Jersey and Pennsylvania, there was no governmental agency to regulate the parties' negotiations. Therefore, the DRPA inferred that neither mediation nor public interest arbitration was available to resolve this dispute. Moreover, the DRPA contended that judicial oversight would be unworkable and New Jersey and Pennsylvania had not agreed to that procedure.
The DRPA also argued that, despite its recognition of Lodge 30 as the collective bargaining agent for the police officers, it was under no legal duty or obligation to negotiate with Lodge 30. Therefore, when the parties failed to reach an accord on a new contract, it was free to implement the terms and conditions of employment which it deemed suitable. The DRPA noted that it submitted its minutes to Governor Whitman and the resolution became effective when she declined to veto the resolution.
The DRPA's motion for summary judgment was denied. Judge Supnick determined that Pennsylvania and New Jersey had "parallel or complementary legislation of a different nature, but which ... nevertheless recognizes those same rights and clearly gives public employees a right to freely organize and designate representatives and also to negotiate in good faith." In response to the DRPA's contention that there was no public agency designated to oversee the negotiations, he held that the court had "the inherent power to deal with matters of that nature."
Six months later, plaintiffs filed a motion for summary judgment on count one of *548 their amended complaint which sought a declaratory judgment that the DRPA had violated the New Jersey constitutional guarantee of public employees to organize and parallel legislation of both states recognizing and implementing this right. They requested an order requiring the parties to negotiate an impasse-resolution procedure featuring interest arbitration under court supervision. Plaintiffs contended this relief was appropriate because New Jersey and Pennsylvania have elected to resolve such impasses by public interest arbitration. In support of their motion, plaintiffs submitted a certification of Clyde W. Summers, the Jefferson B. Fordham Professor Emeritus at the Law School of the University of Pennsylvania, who opined that interest arbitration between public employees and public employers was appropriate and desirable. He also offered an analytical framework to determine whether two states have similar and complementary policies on collective bargaining by police officers and dealing with impasses. Finally, he offered the opinion that the New Jersey and Pennsylvania statutory schemes were "substantially the same."
Defendant responded with a cross-motion for summary judgment or, in the alternative, a motion to strike the Summers report. Substantively, the DRPA argued that not only the policies must be similar but also "the actual legislation" must be similar. The DRPA also contended that requiring it to submit to binding interest arbitration would interfere with the Compact's provision for the Governor's right to veto any action and thus would violate the Supremacy Clause of the United States Constitution.
Prior to ruling on the cross-motions, Judge Vogelson requested the parties "to make one additional attempt to resolve your dispute voluntarily" by reaching an agreement on the terms and conditions of an agreement or on the procedure to resolve an impasse. When the parties failed to reach any agreement, Judge Vogelson proceeded to grant plaintiffs' motion for summary judgment and deny the DRPA's cross-motion. At that time, Judge Vogelson rendered his opinion on the pending summary judgment motions.
Initially, he found that Professor Summers was "a highly qualified expert." He also accepted Professor Summers' opinion "as having credibility and substance."[3] In addition, he stated that Judge Supnick's prior ruling concerning the complementary nature of the New Jersey and Pennsylvania laws governing public employer collective bargaining was the law of the case.
Judge Vogelson also relied on International Union of Operating Eng'rs, Local 68 v. Delaware River and Bay Auth. (Local 68), 147 N.J. 433, 688 A.2d 569, cert. denied, ___ U.S. ___, 118 S.Ct. 165, 139 L.Ed.2d 108 (1997), in which the Court required defendant, a bi-state agency of New Jersey and Delaware, to recognize and engage in collective negotiations with plaintiff union, since the statutes of the two states authorizing collective bargaining for public employees were substantially similar.
Judge Vogelson reasoned that the members of plaintiff Lodge 30 were police officers *549 who patrolled in both New Jersey and Pennsylvania, enforced the laws of both states, and were subject to the same dangers as other police officers. Since both New Jersey and Pennsylvania "provide for a procedure in just this type of case," the DRPA should also. Judge Vogelson also concluded he had the authority to order interest arbitration. Nevertheless, he did not do so; he decided that the parties should select and meet with a mediator "from a list to be provided by the American Arbitration Association [AAA] in accordance with that Agency's rules and regulations," to develop "a procedure and mechanism by which they can resume good faith negotiations."
On November 21, 1997, an order was entered granting plaintiffs' motion for summary judgment on count one of their amended complaint, and denying defendant's cross-motion. The parties were ordered to select a mediator from an AAA list, and to report to the court on their progress; the order recited that "[i]f the [p]arties remain at impasse the Court can and will order binding interest arbitration."
Defendant filed a notice of motion for reconsideration dated December 5, 1997. In support of its motion, defendant submitted (1) a December 4, 1997 certification of Joy Faber, its assistant general counsel; (2) Summers' deposition of November 18, 1997; and (3) an undated opinion of its expert David Weinstein, Professor Emeritus at Temple University School of Law. Defendant's expert, Weinstein, had experience as a public interest arbitrator in Connecticut and Pennsylvania and had served as a fact finder in the 1970s for the Connecticut State Board of Mediation and Arbitration. Like Summers, Weinstein compared the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -29, with Pennsylvania Act 111, Pa. Stat. Ann. tit. 43, §§ 217.1 to .10 (West 1999) (Act 111), but Weinstein disagreed with Summers' conclusion that the two acts were substantially similar.
Prior to disposition of this motion, on December 19, 1997, Judge John Fratto entered an order requiring defendant to appropriate funds for one-half of the AAA mediator's fee for three sessions, pursuant to the AAA's Grievance Mediation Rules, in order to implement Judge Vogelson's order. Judge Fratto's order also dismissed count two of the amended complaint (breach of contract), denied defendant's request to file an additional expert report, and adjourned the return date of defendant's motion for reconsideration.
Following oral argument, Judge Vogelson rendered an oral opinion on January 23, 1998. He acknowledged that he recognized Summers as an expert, but made it "clear for the record" that he read and compared the statutes of New Jersey and Pennsylvania, and found that, despite "some differences between them," they were substantially similar, complementary and parallel "in the context of this case."
The judge reviewed Weinstein's opinion and described it as "narrower, more technical and precise." The judge noted that Summers addressed the policies of the two statutes, while Weinstein emphasized their "terms of implementation," but "they both agree on the purpose of the legislation." Declining to discuss each difference between the statutes raised by Weinstein, the motion judge concluded that "simplistically the policy is dispute resolution without strike, providing a vehicle by which that can be done.... [T]hey are substantially similar for that purpose." The judge reasoned that the differences between the statutes did not change this policy.
Furthermore, Judge Vogelson rejected defendant's argument that his decision negated the Governor's veto power, since the parties were free to agree on a procedure that did not involve the expenditure of funds. The judge also noted that "at this juncture, we don't even know whether there will be interest arbitration." If at some time defendant "is prohibited from spending funds ... that will be presented *550 to the Court and another decision will be made."
On February 17, 1998, an order was entered denying the motion for reconsideration. On that same date defendant filed a timely notice of appeal from this order and the orders of November 21 and December 19, 1997.[4]
On appeal, the DRPA contends, and State of New Jersey as amicus curiae concurs, that the imposition of mediation and binding arbitration violates its right to manage its own affairs in accordance with the Compact.
The DRPA argues that a bi-state compact, approved by Congress under the Compact Clause, U.S. Const. art. I, § 10, cl. 3, becomes a law of the United States. Cuyler, supra, 449 U.S. at 440, 101 S.Ct. at 708, 66 L.Ed.2d at 649. The DRPA cites the Supremacy Clause, which provides that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. It reasons that, as law of the United States, the clear mandate of N.J.S.A. 32:3-5(e), authorizing defendant to establish the duties and compensation of its employees, must be enforced.
The DRPA also contends, again with support from amicus, that the imposition of mediation and arbitration upon it interferes with the policy-making authority of the New Jersey and Pennsylvania Legislatures, and the authority of the New Jersey Governor to veto the action of any of defendant's New Jersey commissioners. N.J.S.A. 32:3-4. Defendant cites N.J. Const. art. III, ¶ 1, which divides the powers of government into the legislative, executive and judicial branches, and provides: "No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution."
The DRPA also argues that only "the adoption by both Compact States of nearly identical State legislation expressly intended to apply to [defendant]" may change the Compact and establish binding interest arbitration.
The DRPA is a public corporate body of two states: New Jersey and Pennsylvania. Eastern Paralyzed Veterans, supra, 111 N.J. at 398, 545 A.2d 127; Yancoskie v. Delaware River Port Auth., 155 N.J.Super. 1, 4, 382 A.2d 77 (App.Div. 1977), aff'd, 78 N.J. 321, 395 A.2d 192 (1978); see also Yancoskie v. Delaware River Port Auth., 478 Pa. 396, 387 A.2d 41 (1978). Thus, neither creator state can unilaterally impose additional duties, powers or responsibilities upon the DRPA. Eastern Paralyzed Veterans, supra; Bell v. Bell, 83 N.J. 417, 424-25, 416 A.2d 829 (1980); Nardi v. Delaware River Port Auth., 88 Pa.Cmwlth. 558, 490 A.2d 949, 950 (1985). For single state jurisdiction to be exercised over the DRPA, there must be complementary state legislation. Eastern Paralyzed Veterans, supra; Nardi, supra.
Among its many powers, the DRPA has the power
(e) To appoint, hire or employ ... such other officers and such agents and employees as it may require for the performance of its duties, by contract or otherwise, and fix and determine their qualifications, duties and compensation.
[N.J.S.A. 32:3-5(e).]
The DRPA is also empowered
(n) To exercise all other powers not inconsistent with the constitutions of the *551 two States or of the United States, which may be reasonably necessary or incidental to the effectuation of its authorized purposes or to the exercise of any of the foregoing powers, ... and generally to exercise in connection with its property and affairs, and in connection with property within its control, any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs.
[N.J.S.A. 32:3-5(n).]
Further, the DRPA also has been bestowed with
such additional powers as may hereafter be delegated to or imposed upon it from time to time by the action of either State concurred in by legislation of the other.
[N.J.S.A. 32:3-5.]
Although the DRPA contends it is not obliged to recognize Lodge 30 as the representative of its police officers or to negotiate with Lodge 30 or its members, it concedes that it has recognized Lodge 30 as the bargaining agent and has entered agreements over a twenty year period with Lodge 30 as the representative of the police officers. The DRPA contends, however, that these voluntary acts do not provide any basis to impose on it the impasse-resolution procedures applicable to public employers in New Jersey to resolve the current impasse between it and its police officers.
Although neither of the creator states of a bi-state agency may "unilaterally impose its legislative will on the bi-state agency," Bunk v. Port Auth. of New York and New Jersey, 144 N.J. 176, 184, 676 A.2d 118 (1996), "the agency may be subject to complementary or parallel state legislation." Ibid. (citation omitted). This parallel or complementary legislation need not be nearly identical and specifically apply to the agency. Rather, the public policy of both states, articulated in parallel statutes that are substantially similar but do not specifically include defendant, is applicable to a bi-state agency, although the statutory scheme of each state is not. This concept was explained in Local 68 in the following passage:
Although a single state may not unilaterally impose its will on a bi-state agency, the creator states together may subject the agency to complementary or parallel state legislation. Separate legislative acts are complementary or parallel if they are substantially similar in nature. Legislation is substantially similar if the creator states evidence some showing of agreement in the laws involving and regulating a bi-state agency.
[Local 68, supra, 147 N.J. at 445, 688 A.2d 569 (citing Eastern Paralyzed Veterans, supra, 111 N.J. at 400-02, 545 A.2d 127).]
The New Jersey Supreme Court first applied this theory in International Org., supra, 45 N.J. at 147, 211 A.2d 789, to restrain a union from striking against a bi-state agency. The Court relied on the "historic and widely prevailing policy against strikes by public employees" which was "equally applicable in both states," although this policy was not expressed in any legislation. Ibid.
Eastern Paralyzed Veterans, supra, 111 N.J. at 391, 545 A.2d 127, involved the proposed construction in New Jersey of a mass transit terminal for train service to be operated by a subsidiary of the DRPA. The New Jersey Department of Community Affairs, which had to approve the construction plans, requested an elevator for the handicapped; plaintiff contended that the elevator was required under New Jersey law. Id. at 394-96, 545 A.2d 127.
The Court determined that New Jersey could not impose duties or responsibilities on a bi-state agency unauthorized by its Compact, unless there was "complementary state legislation" in each state. Id. at 398-99, 545 A.2d 127. The Court thus remanded to determine whether Pennsylvania would have required an elevator if the terminal had been built there. Id. at 400-02, 545 A.2d 127. The Court did not *552 require that the Pennsylvania and New Jersey laws expressly provide that they applied to the DRPA. Id. at 400-01, 545 A.2d 127.
In Ballinger v. Delaware River Port Auth., 311 N.J.Super. 317, 709 A.2d 1336 (App.Div.1998), this court affirmed the dismissal of plaintiff's complaint seeking relief pursuant to the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. We recognized that the statutes enacted by both states governing the same subject matter need not be identical. Id. at 324-25, 709 A.2d 1336. However, we identified four differences between the New Jersey legislation and the Pennsylvania Whistleblower Law, Pa. Stat. Ann. tit. 43, §§ 1421 to 1428 (West 1999), which militated against a conclusion that the acts were substantially similar. Id. at 327-28, 709 A.2d 1336. Those differencesCEPA covers public and private employers while the Whistleblower Law covers public employers, a different statute of limitations, a right to trial by jury in New Jersey but a bench trial in Pennsylvania, and a right to punitive damages in New Jersey and compensatory damages in Pennsylvaniawere so substantial that this court concluded that New Jersey and Pennsylvania are not in agreement over the applicability of CEPA or the Whistleblower Law to the DRPA. Ibid.
By contrast, in Bunk, supra, 144 N.J. at 181, 676 A.2d 118, an employee of the Port Authority of New York and New Jersey, a bi-state agency of New York and New Jersey, was injured while working, resulting in disability, and received a disability retirement pension from defendant. He also sought workers' compensation in New Jersey. Ibid. As defendant points out, the agency had agreed to provide workers' compensation benefits. Id. at 185, 676 A.2d 118. The Court held that N.J.S.A. 34:15-43, which limited workers' compensation benefits of a public employee who was receiving a disability pension for the same injury, applied, even though it did not specify that it applied to defendant. Id. at 180, 676 A.2d 118.
Notably, the Court declined to "decide the exact contours of New York law" on the subject. Id. at 185, 676 A.2d 118. Rather, it concluded that "the provisions are somewhat similar" and both "reflect a plan to coordinate disability benefits." Ibid. This facial similarity was enough to constitute parallel or complementary legislation of both states.
In Local 68, supra, 147 N.J. at 439, 688 A.2d 569, a union sought to require the Delaware River and Bay Authority (DRBA), a bi-state agency of New Jersey and Delaware, to recognize it as the employees' representative and engage in collective negotiations. The Compact under consideration had a clause similar to N.J.S.A. 32:3-5(e), giving defendant the power to appoint employees, and to fix and determine their duties, compensation, and terms and conditions of employment. Id. at 438, 688 A.2d 569. In addition, the Appellate Division had previously ruled that New Jersey's Public Employment Relations Commission (PERC) did not have jurisdiction over the DRBA. Delaware River & Bay Auth. v. New Jersey Pub. Employment Relations Comm'n (PERC), 112 N.J.Super. 160, 166, 270 A.2d 704 (App.Div.1970), aff'd o.b., 58 N.J. 388, 277 A.2d 880 (1971). Nevertheless, the Court in Local 68 granted the right to recognition and collective negotiation following the provisions of the New Jersey and Delaware statutes governing collective negotiations for public employees, neither of which specified that it applied to defendant, and concluded that, "although not identical," they were "complementary and parallel." Local 68, supra, 147 N.J. at 447, 688 A.2d 569.
Our review of each state's enactments governing police and fire labor relations, the New Jersey Police and Fire Public Interest Arbitration Reform Act (N.J.S.A. 34:13A-14a to -29) and the Pennsylvania Collective Bargaining by Policemen or Firemen Act (Pa. Stat. Ann. tit. *553 43, §§ 217.1 to .10 (West 1999)) (Act 111), reveals that each state has made a policy decision in favor of public interest arbitration for police officers. Certainly, there are some differences in each scheme. For example, in New Jersey, "[a]rbitration shall be limited to those subjects that are within the required scope of collective negotiations, except that the parties may agree to submit to arbitration one or more permissive subjects of negotiation." N.J.S.A. 34:13A-16f(4). A subject is negotiable if it "intimately and directly affects the work and welfare" of the employees; has not been preempted by statute or regulation; and "a negotiated agreement would not significantly interfere with the determination of governmental policy." In re Local 195, 88 N.J. 393, 404, 443 A.2d 187 (1982). "To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer." Id. at 404-05, 443 A.2d 187.
In Pennsylvania also, "the terms and conditions" of employment are proper subjects of negotiation, Pa. Stat. Ann. tit. 43, § 217.1 (West 1999), and arbitration. Police Bargaining Unit of Montoursville Police Dep't v. Borough of Montoursville, 160 Pa.Cmwlth. 333, 634 A.2d 830, 832 (1993), appeal denied, 540 Pa. 635, 658 A.2d 798 (1995). As in New Jersey, an arbitrator may not require the performance of an act that is prohibited by law. Ibid. Contrary to defendant's view, as in New Jersey, "matters of inherent managerial policy" are not subject to arbitration under Act 111. Id. at 833-34 (concluding that the strength of the police force was not arbitrable).
Defendant cites Township of Upper Saucon v. Pennsylvania Labor Relations Bd., 152 Pa.Cmwlth. 530, 620 A.2d 71, 74 (1993), in which the court rejected the argument that Pennsylvania law requires the balancing of an employer's "managerial purposes and objectives in order to determine whether the subject at issue is rationally related to employees' duties." Amicus concurs that Pennsylvania "would allow a decision that does not take into account the public interest." However, the court in Upper Saucon, supra, holding that the implementation of a new steady shift schedule for police officers was a mandatory subject of bargaining under Act 111, explained that management objectives are properly considered, and "`a managerial policy concern must substantially outweigh any impact an issue will have on the employe[e]s for that issue to be deemed a managerial prerogative.'" Ibid. (quoting the proposed decision and order of the hearing examiner). See also Frackville Borough Police Dep't v. Pennsylvania Labor Relations Bd., 701 A.2d 632, 634-35 (Pa.Commw.Ct.1997), appeal denied, 551 Pa. 706, 712 A.2d 287 (1998) (choice of a pension plan manager is within managerial policy exception to collective bargaining).
Furthermore, arbitrators appointed in New Jersey and Pennsylvania must consider similar factors. New Jersey lists eight factors which the arbitrator or panel of arbitrators must consider: (a) the interests and welfare of the public; (b) a comparison of the wages and other conditions of employment of the employees in issue to those of other public and private employees performing the same or similar work; (c) the employees' current overall compensation; (d) the parties' stipulations; (e) the employer's lawful authority; (f) the financial impact on the governing unit, its residents and taxpayers; (g) the cost of living; and (h) the continuity and stability of employment. N.J.S.A. 34:13A-16g.
Pennsylvania's Act 111 does not require the arbitrators to consider any specific criteria. However, as plaintiffs point out, other Pennsylvania statutes, The Municipalities Financial Recovery Act (Pa. Stat. Ann. tit. 53, §§ 11701.101 to .501 (West 1999)) and the Intergovernmental Cooperation Authority Act for Cities of the First Class (Pa. Stat. Ann. tit. 53, §§ 12720.101 to .709 (West 1999)), require police and *554 fire public interest arbitrators to consider the financial impact on distressed municipalities. Furthermore, the factors enumerated in the New Jersey legislation are simply a codification of the factors any competent public interest arbitrator would apply.
Although we discern some differences in each state's legislation governing public employer-employee labor disputes, we conclude that these differences do not negate the basic public policy of each state that their public employees are entitled to engage in collective negotiations with their employer. The discrepancies are not so significant to render the two statutory schemes substantially dissimilar. Thus, the New Jersey statutes and the Pennsylvania statutes are complementary and parallel.
We are also not concerned that by ordering mediation and public interest arbitration, if necessary, the trial court is venturing into an area usually reserved to a specialized agency. This concern arises because PERC does not have jurisdiction of the DRPA. See PERC, supra, 112 N.J.Super. at 162, 270 A.2d 704. A similar argument was raised and rejected in Local 68. There, Justice Pollock stated:
Nor do we share the dissent's lack of confidence in the ability of the Chancery Division to interpret labor law.... Historically, courts have exercised equitable power to resolve labor disputes. See, e.g., Local No. 11 of Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers v. McKee, 114 N.J. Eq. 555, 169 A. 351 (Ch. Ct.1933) (appointing receiver to manage union's business until members could elect new officers); Fryns v. Fair Lawn Fur Dressing Co., 114 N.J. Eq. 462, 168 A. 862 (Ch. Ct.1933) (holding Chancery Court had jurisdiction and that employer could not force employees to join a particular union).... At some time, the New Jersey and Delaware Legislatures may adopt legislation designating an agency to resolve "the myriad of issues that will arise during the course of collective negotiations." [Douglas L. Leslie, ed., The Railway Labor Act 7 (BNA Books 1995) ]. Until such time as the legislatures make such a designation, however, the absence of such legislation does not deprive the [court] of jurisdiction.
[Local 68, supra, 147 N.J. at 448, 688 A.2d 569.]
This reasoning is no less applicable in this case.
Finally, we reject defendant's and amicus' argument that the order to require mediation and possibly public interest arbitration usurps the veto power bestowed on the Governor of New Jersey. N.J.S.A. 32:3-4. However, the Compact specifically recognizes that the legislatures of both states may delegate or impose additional powers on the DRPA. N.J.S.A. 32:3-5. Furthermore, the Governor's veto power is a check on the actions of the DRPA rather than an affirmative grant to thwart public policy.
Accordingly, we affirm the order requiring the DRPA to mediate and, if necessary, submit to public interest arbitration its contract dispute with Lodge 30.
Affirmed.
NOTES
[1] Such an interstate compact is "law of the Union," Delaware River Joint Toll Bridge Comm'n v. Colburn, 310 U.S. 419, 427, 60 S.Ct. 1039, 1040, 84 L.Ed. 1287, 1289 (1940), whose interpretation is a question of federal law. Cuyler v. Adams, 449 U.S. 433, 438 n. 7, 101 S.Ct. 703, 707 n. 7, 66 L.Ed.2d 641, 648 n. 7 (1981); Eastern Paralyzed Veterans Ass'n, Inc. v. City of Camden, 111 N.J. 389, 397, 545 A.2d 127 (1988).
[2] In addition to Lodge 30, its president, Joseph Vena, is also a plaintiff.
[3] Defendant correctly argues that a trial court should not rely upon expert opinions on New Jersey law. Healy v. Fairleigh Dickinson Univ., 287 N.J.Super. 407, 413, 671 A.2d 182 (App.Div.), certif. denied, 145 N.J. 372, 678 A.2d 713, cert. denied, 519 U.S. 1007, 117 S.Ct. 510, 136 L.Ed.2d 399 (1996); State v. Grimes, 235 N.J.Super. 75, 80, 561 A.2d 647 (App.Div.), certif. denied, 118 N.J. 222, 570 A.2d 976 (1989). Judge Vogelson's acceptance of the Summers opinion does not require a reversal because his decisions, particularly on the motion for reconsideration, reveal an independent review of each statutory scheme and an independent determination of the complementary and parallel nature. Furthermore, Summers and Weinstein did offer an opinion on the law of another state, which may be an appropriate subject of expert testimony. Grimes, supra; Max v. Max, 123 N.J.L. 580, 589, 10 A.2d 163 (Sup.Ct.), aff'd o.b., 125 N.J.L. 271, 15 A.2d 616 (E. & A.1940).
[4] Arguably, the February 17, 1998 order is interlocutory because the parties have not been ordered to submit their dispute to public interest arbitration. However, given the public importance of this issue and the need for guidance to the parties involved in this dispute, we proceed to address the merits of the legal issues before us. Delaware River and Bay Auth. v. International Org. of Masters, Mates & Pilots (International Org.), 45 N.J. 138, 142, 211 A.2d 789 (1965).