DELAWARE RIVER PORT AUTHORI-
TY; Port Authority Transit Corpora-
tion, a subsidiary of the Delaware Riv-
er Port Authority

v.

FRATERNAL ORDER OF POLICE,
Penn–Jersey Lodge 30, an unincorpo-
rated labor organization; James R.
Stewart, in his capacity as President
of FOP Lodge 30; New Jersey Po-
licemen's Benevolent Association In-
tercounties Local # 30, an unincorpo-
rated labor organization; Anthony
Cappello, Jr., in his capacity as Pres-
ident of New Jersey Policeman's Be-
nevolent Association Intercounties
Local # 30, Appellants.

No. 01–1866.

United States Court of Appeals,
Third Circuit.

Filed May 14, 2002.

Argued Jan. 17, 2002.

Charles T. Joyce, (argued), Benjamin Eisner, Spear, Wilderman, Borish, Endy, Spear & Runckel, Philadelphia, Pennsylvania, Gary M. Lightman, Lightman & Welby, Harrisburg, Pennsylvania, for appellants, Fraternal Order of Police, Penn–Jersey Lodge 30 and James R. Stewart.

Patrick Matusky, (argued), Jerome J. Shestack, Laura E. Krabill, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pennsylvania, William H. Roberts, Peter A. Gold, Scott A. Mayer, Blank, Rome, Comisky & McCauley, Philadelphia, Pennsylvania, for appellees, Delaware River Port Authority and Port Authority Transit Corporation.

Donald F. Burke, Port Authority of New York and New Jersey, Newark, New Jersey, for Amici Curiae—appellee, The Port Authority of New York and New Jersey.

David B. Greenfield, Waterfront Commission of New York Harbor, New York City, for Amici Curiae—appellee, The Waterfront Commission of New York Harbor.

Michael Houghton, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Richard S. Mroz, Stradley, Ronon, Stevens & Young, Cherry Hill, New Jersey, for Amici Curiae—appellee, The Delaware River and Bay Authority.

BEFORE: SCIRICA and ROSENN, Circuit Judges, and KANE, District Judge *.

SCIRICA, Circuit Judge.

At issue is whether we should give preclusive effect to a state court judgment on a collective bargaining matter. In a declaratory judgment action, the District Court held that despite a prior New Jersey judgment, the Delaware River Port Authority had no duty under its congressionally approved bi-state compact to recognize certain collective bargaining rights of supervisory employees. We will reverse.

## I.

In 1999 the Fraternal Order of Police, Penn–Jersey Lodge 30 ("Lodge 30") and the Policemen's Benevolent Association Intercounties Local 30 ("Local 30") sought recognition and the right to collectively bargain for supervisory law enforcement personnel from the Delaware River Port Authority (DRPA) and the Port Authority Transit Corporation (PATCO), a subsidiary of the DRPA. A majority of "superior officers"—corporals and sergeants with supervisory capacity—employed by the DRPA and the PATCO had authorized the unions to represent them as their exclusive bargaining agents.[1]

The DRPA sought a declaratory judgment in the United States District Court for the Eastern District of Pennsylvania that (1) the authority to fix and determine terms and conditions of employment, including compensation of the superior officers, rests solely with the DRPA; and (2) the DRPA was not required to recognize

---

* Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

1. Because the PATCO's interests in this litigation coincide with the DRPA's interests, we will collectively refer to the two as "the DRPA."

 The DRPA has two separate police forces. Lodge 30 seeks to represent the sergeants and corporals employed by the DRPA itself. Local 30 seeks to represent the sergeants, corporals, and detectives employed by the PATCO's Police Department. The reasons why the different unions seek to represent the different officers are irrelevant to this appeal, so we will not distinguish Lodge 30's arguments from Local 30's arguments.

or bargain collectively with the unions. The unions contended a prior New Jersey judgment merited preclusive effect. *Fraternal Order of Police, Penn–Jersey Lodge 30 v. DRPA*, 323 N.J.Super. 444, 733 A.2d 545, 547 (1999), *cert. denied*, 162 N.J. 663, 745 A.2d 1213 (1999), *cert. denied*, 530 U.S. 1275, 120 S.Ct. 2743, 147 L.Ed.2d 1007 (2000) ("*Lodge 30*").

There is a prior history of labor-management relations between the parties. In 1975, the DRPA voluntarily recognized Lodge 30 as the collective bargaining agent for DRPA patrol officers and until 1996, negotiated a series of collective bargaining agreements.[2] In 1996, labor negotiations stalled between the DRPA and Lodge 30. After the DRPA altered the employment terms and conditions for patrol officers, Lodge 30 brought suit in New Jersey state court to "require the continuation of good faith bargaining" under the prior arrangement. *Id.* The New Jersey Superior Court agreed, finding New Jersey and Pennsylvania had "parallel or complementary legislation of a different nature ... which ... clearly gives public employees a right to freely organize and designate representatives and also to negotiate in good faith." *Id.* (quotation and citation omitted). Holding the New Jersey and Pennsylvania statutes demonstrated a shared public policy favoring labor arbitration, the Superior Court granted Lodge 30's motion for summary judgment. *Id.* at 547–48.

The New Jersey Superior Court, Appellate Division, affirmed, holding:

> Although neither of the creator states of a bi-state agency may unilaterally impose its legislative will on the bi-state agency ... the agency may be subject to complementary or parallel state legisla-

tion. . . . This parallel or complementary legislation need not be nearly identical and specifically apply to the agency. Rather, the public policy of both states, articulated in parallel statutes that are substantially similar but do not specifically include defendant, is applicable to a bi-state agency, although the statutory scheme of each state is not.

*Id.* at 551 (quotations and citations omitted). The New Jersey Supreme Court denied a petition for certification. 745 A.2d 1213 (1999). The United States Supreme Court denied certiorari. 530 U.S. 1275 (2000).

The unions cite the preclusive effect of *Lodge 30*. Additionally, they claim the New Jersey and Pennsylvania statutes providing collective bargaining rights to patrol officers also apply to the DRPA. *See* N.J.Stat.Ann. § 34:13A–1 et seq. (West 1990 & Supp.1993), Pa.Stat.Ann. tit. 43, § 217.1 et seq. (1961 & Supp.1993). These "complementary" statutory schemes, the unions contend, demonstrate each legislature has "concurred in" the legislation of the other, effectively modifying the DRPA Compact.

The District Court granted the DRPA's motion for summary judgment, concluding that under federal constitutional and statutory law, the DRPA Compact can only be amended by legislation of both New Jersey and Pennsylvania that (1) "expressly applies" to the DRPA; and (2) is "substantially similar" in substance, imposing specific additional duties on the DRPA. *DRPA v. Fraternal Order of Police*, 135 F.Supp.2d 596, 606–09 (E.D.Pa.2001). Because neither legislature expressly applied their state's labor laws to the DRPA, the District Court ruled the DRPA was not

**2.** These officers were considered "rank and file" members of the departments. The officers seeking recognition and bargaining rights in the present suit are their "superiors."

obligated to comply with state laws regarding union recognition and collective bargaining for law enforcement officers. *Id.* The District Court also rejected the unions' issue preclusion arguments, holding *Lodge 30* only addressed the DRPA's obligation to bargain with a voluntarily recognized union. *Id.* at 609–11.[3] This appeal followed.[4]

## II.

In 1931, the State of New Jersey and the Commonwealth of Pennsylvania legislatively created the Delaware River Port Authority to develop the ports of Philadelphia and Camden and to operate bridges and provide mass transportation across the Delaware River. N.J.STAT.ANN. § 32:3–2 et seq.; PA.STAT.ANN. tit. 36, § 3503 et seq. Under the Compact Clause of the United States Constitution, "No State shall, without the Consent of Congress ... enter into any Agreement or Compact with another State." U.S. CONST. art. I, § 10, cl. 3. The United States Congress formally approved the DRPA Compact in 1932.

The DRPA is a "public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey." N.J.STAT.ANN. § 32:3–2, PA.STAT.ANN. tit. 36, § 3503. But it is not an "arm" of either state. Nor is it vested with attributes of state sovereignty. *Peters v. DRPA*, 16 F.3d 1346, 1351–52 (3d Cir. 1994). The DRPA's powers and duties are framed entirely by the Compact. It is governed by a sixteen-member Board of Commissioners.[5] A majority of each state's delegates to the Board must approve any DRPA action. *Id.* The Compact allows either state's legislature to grant the DRPA additional powers or impose on it additional duties by passing legislation that is "concurred in by the legislation of the other [state]." N.J.STAT.ANN. § 32:3–5, PA.STAT.ANN. tit. 36, § 3503.

Article IV(e) of the Compact provides the DRPA Commissioners the right to "appoint, hire or employ ... agents and employees, as it may require for the performance of its duties, by contract or otherwise, and fix and determine their qualifications, duties and compensation." N.J.STAT.ANN. § 32:3–5, PA.STAT.ANN. tit. 36, § 3503. Under Article IV(e), the DRPA maintains a Bureau of Police to protect the public and DRPA property. The Bureau consists of patrol officers, sergeants, and corporals, who are accorded "all of the powers ... and all of the immunities conferred by law on police officers or municipal police officers in ... the State of New Jersey and the Commonwealth of Pennsylvania." N.J.STAT.ANN. § 32:4–6, PA.STAT.

---

3. The District Court cited cases interpreting New Jersey–New York interstate agencies: the Waterfront Commission, *e.g., Malverty v. Waterfront Comm'n*, 71 N.Y.2d 977, 529 N.Y.S.2d 67, 524 N.E.2d 421 (1988), and the Port Authority of New York and New Jersey, *e.g., Bailey v. Port Auth.*, 216 A.D.2d 42, 627 N.Y.S.2d 921 (1995). Those cases adopted an "express intent" standard, requiring that both legislatures expressly state an intention to alter a bi-state compact. *DRPA*, 135 F.Supp.2d at 604–06.

4. The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

5. Eight of the Commissioners are appointed by the Governor of New Jersey for periods of five years. The Governor of Pennsylvania appoints six Commissioners for five-year terms, with the elected Auditor General and the elected State Treasurer of Pennsylvania filling the remaining two positions for their four-year terms. All Commissioners, other than the Pennsylvania Auditor General and State Treasurer, continue to hold office after the expiration of their terms and until their successors are appointed and qualified.

Ann. tit. 36, § 3504.1. The DRPA Compact itself does not expressly grant DRPA employees collective bargaining rights. Nor does the Compact impose a duty on the DRPA's management to bargain collectively with unions.

## III.

■■ First, we consider whether the District Court wrongfully declined to give issue preclusive effect to *Lodge 30*, which held that legislation need not "specifically" apply to the DRPA Compact to modify the DRPA's obligations to collectively bargain with its police officers. We exercise plenary review over this question of law.[6]

■■ Under the doctrine of issue preclusion, a determination by a court of competent jurisdiction on an issue necessary to support its judgment is conclusive in subsequent suits based on a cause of action involving a party or one in privity. *E.g., Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) ("[T]he usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum."); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."); *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."). Stated broadly, issue preclusion prevents relitigation of the same issues in a later case.[7]

■■ More than two hundred years ago, the first Congress enacted the predecessor to 28 U.S.C. § 1738, the Full Faith and Credit Act, which now provides:

---

6. The DRPA urges us to review for abuse of discretion. New Jersey courts have sometimes applied the issue preclusion doctrine in a discretionary way. *See, e.g., New Jersey v. Gonzalez*, 75 N.J. 181, 380 A.2d 1128, 1132 (1977) ("a variety of factors may make [the use of issue preclusion] in a particular case either unjust or counterproductive"). Our circuit has not always been consistent. *See, e.g., Witkowski v. Welch*, 173 F.3d 192, 198 n. 7 (3d Cir.1999) (collecting cases employing different standards). But in *Dici v. Pennsylvania*, 91 F.3d 542 (3d Cir.1996), we said, "On appeal, our review of the district court's grant of summary judgment in favor of the Appellees on the ground of issue preclusion is plenary." *Id.* at 547. A majority of our sister circuits have also endorsed a de novo analysis. *E.g., Chartier v. Marlin Mgmt.*, 202 F.3d 89, 93 (2d Cir.2000); *Keystone Shipping Co. v. New England Power Co.*, 109 F.3d 46, 50 (1st Cir.1997); *United States v. Shenberg*, 89 F.3d 1461, 1478 (11th Cir.1996); *Sandberg v. Va. Bankshares, Inc.*, 979 F.2d 332, 334 (4th Cir. 1992), *vacated and remanded for dismissal*, 1993 WL 524680 (4th Cir.1993); *United States v. Sandoz Pharm. Corp.*, 894 F.2d 825, 826 (6th Cir.1990). The Courts of Appeals for the Fifth and Eighth Circuits have endorsed an abuse of discretion standard, but they have done so only when reviewing the refusal to apply "offensive collateral estoppel," a "less favored" type of issue preclusion than the "defensive collateral estoppel" involved here. *Accord Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–30, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

We exercise plenary review over the grant of summary judgment and the legal interpretation of the Compact. *Witkowski*, 173 F.3d at 198. Because this appeal does not address the potential overturning of a state court judgment, no "*Rooker–Feldman* issues" arise. *Cf. Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir.1995).

7. We have observed that issue preclusion can avoid the costly litigation of issues already determined. *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 593 (3d Cir.1989).

The ... judicial proceedings of any court of any ... State, Territory, or Possession [of the United States] ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Section 1738 therefore requires state court decisions be given the same preclusive effect in federal court they would be given in the courts of the rendering state. The phrase "every court within the United States" encompasses all courts, regardless of jurisdiction. The statute directs federal courts considering the preclusive effect of another jurisdiction's prior judgment to look not to federal preclusion law or practice but to what the other jurisdiction would decide regarding its preclusive effect.[8]

■■■ The threshold issue on appeal is whether the District Court should have given preclusive effect to the narrow issue of the DRPA's collective bargaining obligations, previously litigated in *Lodge 30*.[9] A federal court looks to the law of the adjudicating state to determine its preclu-

sive effect. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir.1999). In New Jersey, when a judgment of a court of competent jurisdiction determines a question in issue, the judgment estops the parties and privies from relitigating the same issue in a subsequent proceeding. *City of Plainfield v. Pub. Serv. Elec. & Gas Co.*, 82 N.J. 245, 412 A.2d 759, 765 (1980). Such a determination is conclusive on either the same or a different claim. *Id.* at 766.

■■■ New Jersey courts apply a five-pronged test to determine whether collateral estoppel should bar relitigation of an issue: (1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding. *In re Estate of Dawson*, 136 N.J. 1, 641 A.2d 1026, 1034–35 (1994).[10]

As noted, the District Court rejected any preclusive effect of *Lodge 30*:

**8.** In *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986), the Supreme Court considered a state court's refusal to give preclusive effect to a prior federal judgment, where the state court reached a judgment contrary to that of the federal court. Even in this circumstance, where the state court—arguably wrongly—did not find any preclusive effect, the Supreme Court unanimously refused to allow the prior federal winner to seek a federal court injunction against further proceedings. *Id.* at 525. That the first federal judgment came in a federal question case was of no consequence. The Court stated the remedy for a possible state court error lay "by way of appeal through the state-court system and certiorari from this Court." *Id.*

**9.** *Accord Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 384, 105 S.Ct. 1327,

84 L.Ed.2d 274 (1985); *N.J.–Philadelphia Presbytery of the Bible Presbyterian Church v. N.J. Bd. of Higher Educ.*, 654 F.2d 868, 876 (3d Cir.1981).

**10.** Under federal common law the standards are almost identical. In *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495 (3d Cir. 1992), we held preclusion was appropriate when an issue was distinctly put in issue, directly determined adversely to the party against whom estoppel is asserted, and where: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Id.* at 504.

The issue in this case, but not present in *Lodge 30,* is whether, in the absence of voluntary recognition, DRPA is obligated under the terms of the Compact to recognize and bargain collectively with the Unions.... Therefore, because the duty of the DRPA under the Compact to recognize and bargain collectively with police officers was not relevant to the cause of action or the issues involved in *Lodge 30* and was not considered by the Appellate Division, *Lodge 30* is not a bar to the instant action.

135 F.Supp.2d at 611.[11]

We disagree. *Lodge 30* satisfies the requirements outlined in *Dawson* and has preclusive effect here. In *Lodge 30,* the "identical issue"—whether an "express statement" is necessary to modify the DRPA's obligations to bargain with its patrol officers—was "litigated in the prior proceeding." *See* 733 A.2d at 550 (referencing the DRPA's contention that only "the adoption by both Compact States of nearly identical State legislation expressly intended to apply" to the DRPA may alter the Compact); *id.* at 551:

> The DRPA contends ... that these voluntary acts [of union recognition] do not provide any basis to impose on it the impasse-resolution procedures applicable to public employers in New Jersey to resolve the current impasse between it and its police officers.... [T]he agency may be subject to complementary or parallel state legislation. This parallel or complementary legislation need not be nearly identical and specifically apply to the agency. Rather, the public policy

of both states, articulated in parallel statutes that are substantially similar but do not specifically include defendant, is applicable to a bi-state agency....

(quotations and citations of New Jersey cases omitted). There was a "final judgment on the merits." The "determination" that an express statement is unnecessary to modify the DRPA Compact was "essential to the prior judgment." And the party against whom issue preclusion is asserted was "a party or in privity with a party to the prior adjudication." As noted, the DRPA litigated both lawsuits. *Cf. United States v. Silliman,* 167 F.2d 607, 616–18 (3d Cir.1948).

Additional factors support our conclusion. The DRPA could have removed *Lodge 30,* which presented federal constitutional questions, but chose instead to litigate in state court. Also, *Lodge 30* was decided less than three years ago and New Jersey courts have not called it into question in the interim. Furthermore, the *Lodge 30* decision has not proven "inequitable." Nor do we review the soundness of the *Lodge 30* decision. The issues in that case are not before us and have been rejected in the state appellate proceedings where the parties elected to litigate. Whether we would have reached the same result as the New Jersey court is not at issue.

The effort to distinguish the facts and issues between this litigation and *Lodge 30* is unavailing. For the purposes of issue preclusion, any distinction between this litigation and *Lodge 30* is legally insignificant.[12] The plaintiffs in *Lodge 30* sought

**11.** In a footnote, the District Court added, "The DRPA is of course free to voluntarily recognize and bargain collectively with its superior officers. The issue presented by this case is not whether the DRPA has the power to recognize and bargain collectively, but

whether it is under any legal duty to do so." *Id.* at 611 n. 18.

**12.** The DRPA claims that even where a prior and a subsequent proceeding turn on a common underlying issue, if the factual circumstances of the cases differ, the issue may not

to represent patrol officers, whose union the DRPA had recognized for more than twenty years, while the plaintiffs here seek to represent their "superior officers." It is true that there was no voluntary recognition of a bargaining unit for the superior officers. But the *Lodge 30* judgment was not based on prior voluntary recognition. 733 A.2d at 551.[13] The *Lodge 30* court held the unions' right to negotiate was statutory, not contractual, so the "voluntary" recognition issue was irrelevant to its judgment.

Under this set of facts, we must give effect to the *Lodge 30* court's determination that in the context of collective bargaining for law enforcement officers, amending the DRPA Compact does not require "express" statutory amendment by

its creator states. 733 A.2d at 551 (finding the DRPA "may be subject to complementary or parallel state legislation .... [that] need not be nearly identical and specifically apply to the agency," provided the "public policy of both states, [as] articulated in parallel statutes that are substantially similar" is complementary).[14] If a New Jersey state court had heard this case in the first instance, we believe it would find *Lodge 30* controlling.[15] Issue preclusion is proper when factual differences "are of no legal significance whatever in resolving the issue presented in both cases." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 174, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).

That the litigation concerns federal law does not alter the analysis in

be "identical" for estoppel purposes. *Dawson*, 641 A.2d at 1035. But the "differences" in *Dawson* were significant. There, the case hinged on whether particular stock distributions were better labeled as dividends or splits. *Id.* Because the corporation in the case with the alleged estoppel effect was different from the one in *Dawson*, the court found no issue preclusion: "Inasmuch as the corporations and their corresponding stock transactions are different, the issues to be litigated in the accountings are different as well." *Id.* Additionally, no "sufficient identity of parties" existed in *Dawson* to bind the court to a prior result. *Id.*

13. The DRPA disputes that New Jersey courts always disavowed the "express intent" requirement. In *DRBA v. Int'l Org. of Masters, Mates & Pilots*, 45 N.J. 138, 211 A.2d 789 (1965), the court held a union representing Delaware River and Bay Authority (DRBA) employees was prevented from striking by a New Jersey law, but refused to reach the opposite conclusion that the DRBA was bound by New Jersey labor laws. *Id.* at 794; *see also Bell v. Bell*, 83 N.J. 417, 416 A.2d 829, 833 (1980) (agreements governing bi-state agencies must be agreed upon by both states involved). The DRPA argues the "abrupt departure" in jurisprudence occurred in recent New Jersey state court decisions allowing statutes not expressly applying to bi-state agencies to bind the entity to a certain

public policy. But it is not our task to correct "departures" in New Jersey jurisprudence.

14. The Constitution's Full Faith and Credit Clause does not apply in this context. The Clause only indicates that full faith and credit shall be given in each state to the judicial proceedings of every other state. U.S. CONST. art. IV, § 1.

15. In *Switlik v. Hardwicke Co., Inc.*, 651 F.2d 852 (3d Cir.1981), the plaintiff filed a 42 U.S.C. § 1983 action claiming the Supreme Court's denial of certiorari of a state court conviction constituted state action violating his constitutional rights. We found the "very issues presented by this civil rights action were raised and litigated in at least the appellate courts of New Jersey and were presented to the United States Supreme Court in the petition seeking a writ of certiorari." *Id.* at 857. After "freely and forcefully" pressing their claims in the state system, we noted, the plaintiffs "now seek to have the same issues heard again in the federal system.... This is the precise situation in which the doctrines of res judicata and collateral estoppel operate as a bar." *Id.* at 859. Although the issue before the federal and state courts in *Switlik* were identical, its holding demonstrates the res judicata effect of certain final judgments.

this case.[16] Compacts, though approved by Congress, are contracts between states. These contracts rarely contain uniform terms. As Justice Frankfurter observed:

Since a Compact comes into being through an Act of Congress, its construction gives rise to a federal question. But a federal question does not require a federal answer by way of a blanket, nationwide substantive doctrine where essentially local interests are at stake. A Compact, is after all, a contract. Ordinarily, in the interpretation of a contract, the meaning the parties attribute to the words governs the obligations assumed in the agreement. Similarly, since these States had the freedom to waive or to refuse to waive immunity granted by the Eleventh Amendment, the language they employed in the Compact, not modified by Congress, should be limited to the legal significance that these States have placed upon such language, not to avoid the obligations they undertook, but to enforce the meaning of conventional language used in their law.

*Petty v. Tenn.–Mo. Bridge Comm'n*, 359 U.S. 275, 285, 79 S.Ct. 785, 3 L.Ed.2d 804

(1959) (Frankfurter, J., dissenting) (citations omitted); *see also Hess*, 513 U.S. at 43–44, 115 S.Ct. 394.

 State courts may answer federal questions.[17] The unions and the DRPA agreed to litigate this issue of federal law in New Jersey courts. If those courts answered federal questions erroneously, it remained for state appellate courts, and ultimately for the United States Supreme Court, to correct any mistakes. Error in a prior judgment is not a sufficient ground for refusing to give it preclusive effect. *Cf. Salazar v. United States Air Force*, 849 F.2d 1542, 1548 (5th Cir.1988) (finding a prior state court decision "wrong and unacceptable," but holding that under 28 U.S.C. § 1738, a later federal court was bound to enforce it "[n]o matter how intrinsically erroneous state district court's unappeased judgment"). New Jersey courts have found that New Jersey and Pennsylvania, the parties to the Compact, have not required an "express statement" to modify the DRPA's obligations to collectively bargain with its patrol officers.[18] Under this set of

---

**16.** *Accord Hickerson v. City of New York*, 146 F.3d 99, 103–13 (2d Cir.1998) (finding state court's rejection of plaintiffs' state constitutional claims foreclosed plaintiffs from relitigating, in the form of a First Amendment claim in federal court, the same issues resolved against them in state court); *see also Marrese*, 470 U.S. at 385–86, 105 S.Ct. 1327 (finding a state court decision can even preclude federal litigation over certain claims over which Congress vests federal courts with exclusive jurisdiction). As the District Court correctly observed, issues relating to the interpretation of a bi-state contract present federal questions. *Cuyler v. Adams*, 449 U.S. 433, 440, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

**17.** Discussing one New Jersey Supreme Court case, the District Court held, "Because the . . . Court was professedly interpreting federal law, their pronouncements are only persua-

sive authority with respect to this court. Of course, if New Jersey state law applied and the New Jersey Supreme Court was construing New Jersey law, its holdings would be binding on this court." 135 F.Supp.2d at 606 n. 9. We believe this statement erroneously stated the doctrine of issue preclusion, which can prohibit relitigation in federal court of issues decided in state court.

**18.** The District Court's public policy analysis of whether the "concurred in" requirement was satisfied absent "express" statutory statements was unnecessary. *Cf. Montana*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The District Court held the DRPA represented a "surrender" of sovereignty from New Jersey and Pennsylvania that must be "strictly construed." 135 F.Supp.2d at 603. Because neither New Jersey nor Pennsylvania expressly required they DRPA to bargain with its superior officers, the Court held

facts, that determination must be granted preclusive effect.[19]

The United States Supreme Court has cautioned that a "question or right distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law," where "a party . . . freely and without reservation submits his federal claims for decision by the state courts . . . and has them decided there." *Montana*, 440 U.S. at 163, 99 S.Ct. 970 (quotation and citation omitted); *see also Fed. Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) ("A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack."). Were we sitting on the New Jersey courts, we might have interpreted the respective statutes and the DRPA's obligations to its patrol officers differently. But we may not reconsider the New Jersey judgment.

## IV.

▪ We turn now to a matter not considered by the District Court.[20] Because

the District Court found no "express statement" authorizing collective bargaining, it did not consider whether New Jersey and Pennsylvania law enforcement labor laws, providing police officers the right to organize and collectively bargain, were "complementary and parallel." As noted, the District Court refused to grant preclusive effect to *Lodge 30*'s determination that an "express statement" was not necessary to modify the DRPA's collective bargaining obligations for law enforcement officers. For the same reasons, the District Court should have given preclusive effect to *Lodge 30*'s holding New Jersey and Pennsylvania law enforcement labor laws apply to the DRPA.

*Lodge 30* held that New Jersey and Pennsylvania have enacted parallel legislation that gave law enforcement employees the right to freely organize and designate representatives for good-faith negotiations. 733 A.2d at 548–49. The court elaborated:

> Our review of each state's enactments governing police and fire labor relations, the New Jersey Police and Fire Public Interest Arbitration Reform Act and the Pennsylvania Collective Bargaining by

nothing demonstrated collective bargaining rights applied to the superior officers. *Id.* Given *Lodge 30*, we need not reach this issue. But we do not believe cases interpreting compacts between New Jersey and New York, on which the District Court relied, are apposite. *E.g., Dezaio v. Port Auth.*, 205 F.3d 62, 65 (2d Cir.), *cert. denied*, 531 U.S. 818, 121 S.Ct. 56, 148 L.Ed.2d 24 (2000) (refusing to apply New York's or New Jersey's antidiscrimination laws to the Port Authority); *Settecase v. Port Auth.*, 13 F.Supp.2d 530 (S.D.N.Y.1998); *Baron v. Port Auth.*, 968 F.Supp. 924 (S.D.N.Y. 1997); *King v. Port Auth.*, 909 F.Supp. 938 (D.N.J.1995); *C.T. Hellmuth & Assocs., Inc. v. Wash. Metro. Area Transit Auth.*, 414 F.Supp. 408 (D.Md.1976); *Malverty*, 524 N.E.2d at 421.

**19.** The District Court held *International Union of Operating Engineers, Local 68 v. Dela-*

*ware River & Bay Authority*, 147 N.J. 433, 688 A.2d 569 (1997) ("*Local 68*"), and *Bunk v. Port Authority*, 144 N.J. 176, 676 A.2d 118 (1996), were "wrongly decided" and deserved no preclusive effect. The District Court characterized *Bunk*'s treatment of the "law dealing with bistate agencies" as "incomplete and thus inaccurate." 135 F.Supp.2d at 607. Regarding *Local 68*, the District Court found the New Jersey Supreme Court had again "incorrectly conflated the two prongs of the *Eastern Paralyzed–Nardi–Malverty* rule." *Id.* at 608. The District Court also found the "authority of *Local 68* . . . further undermined by a lengthy dissent," which argued the majority opinion was "flawed as a matter of statutory construction, use of precedent, and public policy." *Id.*

**20.** Perhaps for this reason, the parties have not extensively briefed the issue.

Policemen or Firemen Act, reveals that each state has made a policy decision in favor of public interest arbitration for police officers. Certainly, there are some differences in each scheme.... Although we discern some differences in each state's legislation governing public employer-employee labor disputes, we conclude that those differences do not negate the basic public policy of each state that their public employees are entitled to engage in collective negotiations with their employer. The discrepancies are not so significant to render the two statutory schemes substantially dissimilar. Thus, the New Jersey statutes and the Pennsylvania statutes are complementary and parallel.

*Id.* at 552–54 (citations omitted).

The DRPA suggests the differences between the statutory schemes are too numerous to label them "complementary." There are some "differences"—including the different bargaining rights of first-level supervisors in New Jersey and Pennsylvania.[21] But for our purposes, the New Jersey courts have declared the similarities between the schemes significant enough to label them "complementary."

Therefore, we will give preclusive effect to the determination that DRPA and PAT-CO supervisory law enforcement officers have the right to bargain collectively with

management.[22] But we express no opinion on other issues relating to bi-state compacts that fall outside the specific context of labor negotiations with DRPA and PAT-CO law enforcement employees.

## V.

For the foregoing reasons we will reverse and remand for proceedings consistent with this opinion.[23]

---

**21.** And under 43 Pa. Cons.Stat. § 1101.1301, Pennsylvania's PLRB has exclusive jurisdiction over all labor matters. Under N.J.Stat. Ann. § 34:13A–5.2, New Jersey's PERC is vested with such jurisdiction.

**22.** The DRPA contends New Jersey courts can allow relitigation of a purely legal issue, even where the usual prerequisites for issue preclusion are satisfied. *E.g., Dawson,* 641 A.2d at 1034–35; *City of Plainfield,* 412 A.2d at 766; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 28(2) (observing an exception to the doctrine where the issue "is one of law"). The DRPA suggests this issue, which concerns an abstruse issue of federal constitutional law,

merits litigation. But the doctrine of issue preclusion applies equally to issues of law. RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. c ("An issue on which litigation is foreclosed may be one of evidentiary fact, of 'ultimate fact' (i.e., the application of law to fact), or of law ... if the issue [is] one of law, new arguments may not be presented to obtain a different determination of that issue.").

**23.** We need not reach the constitutional inquiry of whether congressional consent is necessary to impose additional duties, as opposed to additional powers, under DRPA.